IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 5, 2002 Session

# LISA H. WADE v. WILLIAM HOWELL WADE, II

**Direct Appeal from the Chancery Court for Montgomery County**
**No. 97-10-0166     Carol Catalano, Chancellor**

_____

**No. M2002-00555-COA-R3-CV - Filed December 31, 2002**

_____

This appeal arises from a change in child support, increasing the Appellant's monthly support obligation and awarding Appellee one half of all un-reimbursed medical and dental expenses while Appellant is in the military. Concerning child support, we affirm in part, with modification, and reverse and remand in part. Concerning un-reimbursed medical and dental expenses, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part as Modified; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, William Howell Wade, II.

Debra A. Wall, Clarksville, Tennessee, for the appellee, Lisa H. Wade.

**OPINION**

Parties were married on December 18, 1982. Two children were born of the marriage. The parties were granted a divorce on the grounds of irreconcilable differences on February 24, 1998. The Marital Dissolution Agreement (MDA) provided for joint custody, with Mother designated as primary custodial parent. Father's child support was set at $1,267.03, an amount "equal to or exceeding" the Tennessee Guideline amount. The MDA provided that "when Husband's income changes Wife shall receive a changed amount of child support, with the provision that the total payments of child support shall equal to thirty two per cent (32%) of Husband's income."

The MDA acknowledged that Father was active duty military. The MDA provided that Father was to keep the children enrolled for military health care benefits and provided for the equal division of uninsured medical benefits once Father left the military. The MDA was silent as to the treatment of uninsured medical expenses while Father remained in the military.

Mother sought arrearage in child support in early December, 2000. She also sought payment of one-half the cost of the children's extracurricular activities and one-half the cost of the children's uninsured medical expenses. Father answered, admitting he had agreed to pay one half of the cost of extra-curricular activities, but denying he had agreed to pay one-half of un-reimbursed medical and dental expenses while in the military. Father counterclaimed for a credit for overpayment of child support, and also sought a downward deviation in his obligation based on time spent with the children.

At trial, Father's military leave and earnings statement (LES) was introduced which showed that for 2001 he grossed $6,054.92 per month, paid federal taxes of $474.22 per month, social security withholdings of $267.19 per month, and medicare withholdings of $62.49 per month. Notwithstanding the admission of the LES into evidence, the trial court apparently based its award of $1,703.00 per month child support for 2001 on the Father's testimony that his net monthly income for that year was $5,313.51.[1]

---

[1]The trial court specifically found that the Husband had underpaid his child support obligation since 1998 based on the "Husband's testimony" that his income was as follows:

1998
| | |
|---|---|
| Gross Income | $5,100.00 |
| Taxes Withheld | $4,358.00 |
| Net Income | $4,358.00 |
| Child Support Paid | $1,267.00 |
| Child Support Owed | $1,390.00 |

1999
| | |
|---|---|
| Gross Income | $5,534.26 |
| Net Income | $4,792.00 |
| Child Support Paid | $1,319.80 |
| Child Support Owed | $1,534.00 |
| Difference per month | $214.20 |

2000
| | |
|---|---|
| Gross Income | $[no amount shown] |
| Net Income | $4,976.00 |
| Child Support Paid | $1,267.00 for 6 months |
| | $1,330.00 for 6 months |
| Child Support Owed | $1,590.00 |
| Difference per month | $323.00 for 6 months |
| | $260.00 for 6 months |

2001
(Gross annual earning will be $72,659.04)
| | |
|---|---|
| Net monthly income will be | $5,313.51 |
| Child Support Paid | $1,364.00 |
| Child Support Owed | $1,703.00 |
| Difference per month | $339.00 |

(continued...)

The MDA specifically provides that uninsured medical and dental costs will be split between the parties upon Father leaving the military. The MDA makes no reference to the treatment of such costs before the occurrence of Father leaving the service. The court found that, despite this omission, Father was responsible for half of uninsured medical and dental expenses while he was in the military.

Appellant submits two (2) issues for review, which we restate as follows:

1.    Did the Trial Court err in its calculation of Appellant's child support obligation by basing such calculation on Appellant's actual net income, in order to account for the tax free nature of a portion of Appellant's income, as opposed to applying the calculation contained in the Tennessee Child Support Guidelines?

2.    Did the trial court err in ordering that uninsured medical and dental expenses be split prior to the occurrence of Mr. Wade leaving the military?

### *Standard of Review*

Our review of a trial court's findings of fact is ***de novo*** upon the record of the trial court. Such review is accompanied by a presumption of correctness, unless the evidence preponderates against such findings. Tenn. R. App. P. 13(d); ***Brooks v. Brooks***, 992 S.W.2d 403,404 (Tenn. 1999). Questions of law are reviewed ***de novo***, with no presumption of correctness. ***Nelson v. Wal-Mart Stores, Inc.***, 8 S.W.3d 625, 628 (Tenn. 1999).

### *Modification of Child Support*

Parents have an obligation to support their minor children. Tenn. Code Ann. § 34-1-102. It is well established that this duty does not terminate with the divorce of the parents. ***Brooks v. Brooks***, 61 S.W.2d 654 (Tenn. 1933). The extent of this duty of support is the duty to support in a manner commensurate with the means and station in the life of the parents. ***State ex rel. Grant v. Prograis***, 979 S.W.2d 594, 601 (Tenn. Ct. App. 1997) (citing ***Brooks***, 61 S.W.2d at 654). Further,

> [u]pon petition for modification of child support obligations, trial courts must increase or decrease support obligations upon a showing of a significant variance between the amount of support provided in the child support guidelines and the amount of support currently ordered unless such variance was the result of a previous

---

[1](...continued)

The record does not reflect how the support numbers were determined. Our calculations, based on 32% of the Appellant's net income, result in the following obligation: 1998, $1,394.56; 1999, $1,533.44; 2000, $1,592.32; 2001, $1,700.32. We find it interesting that while Appellee contends that Appellant's obligation, per the MDA, is to be exactly 32% of his net income, none of these numbers meet that criteria.

court-ordered deviation and the circumstances causing the deviation have not changed.

*Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001); Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2002).

A significant variance is defined as "at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($ 15.00) if the current support is less than $ 100.00 per month." *Id.*; Tenn. Comp. R. & Regs. ch.1240-2-4-.02(3) (2002).

In the present case, Appellant takes issue with the trial court's use of his "true" net income to calculate his support obligation.[2] The trial court, in justifying this approach, stated that Appellant "failed to take into consideration . . . that as a member of the . . . military he does not have as much money withheld from his pay as those in the private sector." We do not believe that the trial court erred in considering the non-taxable nature of portions of Appellant's military compensation in calculating Appellant's child support obligation. We do, however, agree with Appellant that merely using the net income of the Appellant, without applying the Guideline calculations, was in error and resulted in an incorrect calculation of Appellant's child support obligation.[3]

As a member of the military Appellant receives compensation for hi services in the form of various pay and allowances. It is this characterization of Appellant's compensation, as either pay or an allowance, that determines Appellant's tax liability for that portion of his income. *See* 26 U.S.C. § 134 (a)-(b)(1) (2002); 26 U.S.C. § 3121 (I)(2). In addition to his base pay, which is

---

[2]The trial court's final order included the following finding:

That by agreement the husband agreed to pay 32% of his net income as child support . . . which the parties recognized . . . [as meeting] or exceed[ing] the Tennessee Child Support Guidelines. Said divorce decree provided that as Husband's income increased so would his child support obligation to 32% of his net income. *These matters are governed by pure contract law*. (Emphasis added.)

Notwithstanding the provision contained in the Final Decree of Divorce that "Husband shall pay child support based upon Tennessee Department of Human Services Guidelines. . . ." the proposition that this matter is one governed by contract law is incorrect, for "[w]hen the husband and wife contract with respect to the legal duty of child support, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature." *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975). Moreover, "[t]he fact that an agreement by the parties was incorporated in the decree, does not divest the Court of its statutory powers to make subsequent orders where circumstances warrant." *State ex rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 197 (Tenn. Ct. App. 2001) (citing *Doty v. Doty*, 260 S.W.2d 411, 413 (Tenn. Ct. App. 1952)).

[3]"[Tenn. Code. Ann. § 36-5-101] provides that the guidelines promulgated herein *shall be applied* as a rebuttable presumption in child support cases. . . ." Tenn. Comp. R. & Regs. ch.1240-2-4-.01(3) (2002) (emphasis added).

subject to both federal income tax and FICA, Appellant receives BAH,[4] which is an allowance for housing, 37 U.S.C. § 403 (2002), and BAS,[5] an allowance for food. 37 U.S.C. § 402. Neither of these allowances are subject to federal income tax, or FICA. 26 U.S.C. § 134 (a)-(b)(1) (2002); 26 U.S.C. § 3121(I)(2). Appellant also receives Flight Pay, which is subject to federal income tax, but not FICA. *Id.* Military members are well aware that these non-taxable pay and allowances "can constitute large portions of a soldier's . . . total income." Major Mark J. Connor, ***Resolving Child Support Issues Beyond the Scope of AR 608-99***, 132 Mil. L. Rev. 67, 78 (1991). In the present case, they represent 28.8% of Appellant's monthly gross income. How to treat this portion of Appellant's compensation, for the purpose of determining Appellant's child support obligation under the Tennessee Child Support Guidelines, is the real issue presented in this case, and appears to be one of first impression.

The Tennessee Child Support Guidelines have the force of law, ***Jahn v. Jahn***, 932 S.W.2d 939, 943 (Tenn. Ct. App. 1996), and when ruling on matters of child support, the court is instructed to follow these guidelines as promulgated by the Tennessee Department of Human Services. Tenn. Code Ann. § 36-5-101(e)(2) (Supp. 1999); ***Herrera v. Herrera***, 944 S.W.2d 379, 386 (Tenn. Ct. App. 1996). Appellant argues that, under the Guidelines, a service member with a gross income of $6,054.92, a sizable portion of which is nontaxable, should have the same child support obligation as an individual with the same gross income, all of which is taxable. We do not agree.

The Guidelines define gross income as follows:

> Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment. Income from self-employment includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income. Depreciation, home offices, excessive promotional, excessive travel, excessive car expenses, or excessive personal expenses, etc., should not be considered reasonable expenses. "In kind" remuneration must also be imputed as income, i.e., ***fringe***

---

[4] Formerly referred to as Basic Allowance for Quarters (BAQ), and referred to as such in the Guidelines.

[5] Basic Allowance for Subsistence.

***benefits*** such as a company car, the value of on-base lodging and meals in lieu of BAQ[6] and BAS for a military member, etc.

Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a) (2002) (emphasis added).

It is clear from the Guidelines that Appellant's nontaxable pay and allowances are to be included in figuring gross income. However, if one considers only the amount received for these nontaxable allowances as gross income, and then applies the Guideline calculations used to arrive at net income, a monetary award results that does not fairly represent the obligor's true net income. In the case of a military member, applying the Guideline calculations based on actual gross income results in a figure that reflects their net income minus an allowance for taxes which they have not had to pay. Such a result runs afoul of the stated "Purposes and Premises"of the Child Support Guidelines; specifically, "[t]o ensure that when parents live separately, the economic impact on the child(ren) is minimized and to the extent that either parent enjoys a higher standard of living, the child(ren) share(s) in that higher standard." Tenn. Comp. R. & Regs. ch. 1240-2-4-.02(2)(e). This anomaly results from the fact that while these nontaxable entitlements are clearly gross income, they are also net income because no taxes are taken from them. For a service member, the pre-tax amount of such an allowance is equal to the post-tax amount received, as opposed to the majority of workers who pay taxes on all of their income. Unless the nontaxable nature of such pay and allowances is accounted for in the Guideline calculations, the increased take home pay that the service member enjoys, as a result of the tax-free nature of a portion of their income, will not inure to the benefit of their children.

Fortunately, the Guidelines provide a means to account for such non-taxable pay and allowances, whereby "the soldier's income [can] be adjusted upward to account for the increased value of nontaxable income." Major Mark J. Connor, *supra*, at 78. The Guidelines specifically mandate that "'[i]n kind' remuneration must also be imputed as income, i.e., ***fringe benefits*** such as . . . the value of on-base lodging and meals in lieu of [BAH] and BAS for a military member, etc." Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a) (2002) (emphasis added). We view the nontaxable nature of certain military pay and allowances to be a "fringe benefit" falling squarely within the purview of this section of the Guidelines. Accordingly, where a military member receives pay or allowances which are not subject to taxation, an amount must be imputed on top of the amount actually received in calculating Gross Income for purposes of calculating the service member's child support obligation under the Guidelines. The amount to be imputed to the nontaxable portion of the service member's pay should be the amount necessary to raise the gross income to a level such that, when the Guideline deductions are taken to figure net income, the resulting net pay is equal to the original amount of the pay or allowance. We stress that this is not a deviation from the Guidelines and, as such, the trial court need not "make[] a written or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case[]" where they are imputing income to a service member in accordance with this opinion. Tenn. Comp. R. & Regs. ch. 1240-2-4-.01(2).

---

[6] BAQ (Basic Allowance for Quarters) is now referred to as BAH (Basic Allowance for Housing).

Appellant's February, 2001 LES lists his income as follows:

| | |
|---|---|
| Base Pay | $4,309.50 (subject to both Federal Income Tax and FICA) |
| BAS | $160.42 (NOT subject to Federal Income Tax or FICA) |
| BAH | $745.00 (NOT subject to Federal Income Tax or FICA) |
| Fly Pay | $840.00 (subject to Federal Income Tax but NOT FICA) |

A correct calculation of Appellant's child support obligation for the year 2001[7] requires applying the aforementioned imputation of gross income to the Appellant's nontaxable pay and entitlements for that period. This gives Appellant a pre-imputation gross income of $6,054.92, and post-imputation gross income of approximately $6,650.00, calculated as follows: Base Pay + (Fly Pay x 1.0765) (to account for nonpayment of FICA) = $5,213.76 imputed gross. Taking this $5,213.76 gross, and rounding down[8] to $5,200, results in a net income of $3,746.41 per the child support guidelines chart. Adding to this net amount the $160.42 BAS and $745.00 BAH received by Appellant results in a net income of $4,651.83, which rounds up to a net income of $4,652.00. Under the Guidelines, this net income corresponds to a gross income of approximately $6,650.00. Thus, Appellant's imputed gross income, for child support purposes, is $6,650.00 per month. The Guidelines support obligation applicable to this gross income, for two children, is $1,490.00 per month. Applying the Guideline calculations without imputing gross income (*i.e.,* on $6,054.92) would result in Appellant's child support obligation being $1,366.00 per month. Thus, properly accounting for the nontaxable nature of Appellant's pay and allowances results in an increase in his obligation of $124.00 per month. Such a result comports with the "Purposes and Premises" of the Guidelines.

"In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered . . . ." Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2002). "[A] significant variance shall be at least 15% if the current support is one hundred dollars ($100.00) or greater per month . . . ." Tenn. Comp. R. & Regs. ch. 1240-2-4-.02(3) (2002). Appellant was ordered to pay $1,267.03 per month in child support prior to the action seeking modification. The obligation imposed under the guidelines, properly considering his imputed gross income, is $1,490.00 per month. This represents an increase of $222.97 per month, or a 17.6% increase. This meets the statutory definition of significant change thereby warranting an increased award of child support to Appellee for the year 2001. This increase is to be effective from the time the petition for modification was filed. Tenn. Code Ann. § 36-5-101(a)(5) (Supp. 2002).

---

[7]These calculations are based on the Guideline figures applicable for the year 2001. *See* W. WALTON GARRETT, DIVORCE, ALIMONY AND CHILD CUSTODY, APP II (2002).

[8]This is done only to aid in calculation, and should not be construed as prohibiting interpolation.

Based on Appellant's testimony that "he will receive a considerable raise in . . . 2002 of approximately $1000.00 per month . . . ." the trial court set the amount of support for 2002 at $2,020.00 per month.[9] The award for the year 2002, however, was not determined according to the formula set out above. Accordingly, the award for 2002 is reversed and remanded. On remand, the trial court will have to determine if, properly applying the guidelines as set out above (to include imputed income) a significant increase (*i.e.*, 15%) exists between the Appellant's calculated support obligation, based on his 2002 income, and the $1,490.00 obligation currently imposed upon him. If such a significant increase exists, then Appellant's obligation for 2002 shall be adjusted accordingly.

### *Uncovered Medical Expenses*

Appellant alleges that the chancellor erred by ordering that uninsured medical and dental expenses be split prior to the occurrence of Mr. Wade leaving the military. This contention is without merit.

A marital dissolution agreement is a contract. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001). However, as previously discussed, "[w]hen the husband and wife contract with respect to *the legal duty of child support*, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature." *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975) (emphasis added). "[T]he reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify." *Id.* "If the child support provision of the contract did not merge into the decree and lose its contractual nature, any subsequent modification of child support payments by the trial court would be violative of the constitutional prohibition against the impairment of contractual obligations." *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975). The Tennessee Code provides that "[t]he necessity to provide for the child's health care needs shall also be a basis for modification of the amount of the order, regardless of whether a modification in the amount of child support is necessary." Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2002). The Code further provides that "[t]he court . . . may order either party to pay all, or each party to pay a pro rata share of, the health care costs not paid by insurance proceeds." *Id.* § 36-5-101(f)(1). The decision to award such expenses is discretionary. *See Ray v. Ray*, No. 02A01-9404-CV-00078, 1995 Tenn. App. LEXIS 395 at *15 (Tenn. Ct. App. June 13, 1995) (*no perm. app. filed*). In the present case, the trial court concluded that the MDA was silent as to how such expenses were to be treated during Appellant's military career. Accordingly, the trial court properly exercised its discretion in employing its "continuing statutory power" to modify the apportionment of such expenses between the parties.

---

[9] The trial court reached this conclusion after stating that "the Court is unable to specifically calculate the child support obligation for the year 2002 . . . ."

*Conclusion*

For the reasons set forth above, we affirm the trial courts award of increased child support, as modified, for the year 2001. We reverse the order of the child support award for the year 2002, and remand for calculations consistent with this opinion to determine if an increase is warranted from the modified 2001 amount. Further, we affirm the trial courts finding that Appellant is responsible for one-half of un-reimbursed medical and dental expenses while still in the military. We tax the costs of this appeal equally to Appellee, Lisa H. Wade, and Appellant, William Howell Wade, II, and his surety for which execution, if necessary, may issue.

_____
DAVID R. FARMER, JUDGE