IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 18, 2005 Session

## ALFONZO SILVESTRE ARZE v. MARY ANNE BRACKEN ARZE

**Appeal from the Chancery Court for Washington County**
**No. 33035     G. Richard Johnson, Chancellor**

_____

**No. E2004-01325-COA-R3-CV - FILED MAY 23, 2005**

_____

PATRICIA J. COTTRELL, J., dissenting.

In Tennessee, a determination of child support is statutory. *Jones v. Jones*, 870 S.W.2d 281 (Tenn. 1994).[1]  Accordingly, I would approach resolution of this appeal by resort to the applicable statutes.

When the parties were divorced and the decree incorporating their MDA was entered, the parenting plan legislation was not in effect statewide.  However, in October of 2002, when the mother sought a modification of that decree with regard to child support (seeking an increase in the father's obligation) and visitation (or, more properly, establishment of a modified residential schedule for the youngest child),[2] the applicable statute provided that any "decree of modification in an action for absolute divorce . . . involving a minor child shall incorporate a permanent parenting plan."[3]  Tenn. Code Ann. § 36-6-404(a).  By its own terms, this provision applies to this case because the trial court herein entered an order modifying the earlier order, and both involved a minor child.

In *Jones*, 870 S.W.2d at 282, the Tennessee Supreme Court determined that a similar statutory provision requiring the application of the child support guidelines to any action brought to modify child support applied to the proceeding before it, which had been brought after adoption of the statute and sought to modify an order entered before the statutory change.  The same reasoning

_____

[1] The view that child support is based in statute has been established for a long time.  *See, e.g., Rose Funeral Home v. Julian*, 176 Tenn. 534, 144 S.W.2d 755 (Tenn. 1940). *See also Tennessee Dep't. of Children's Services v. Wilson,* 132 S.W.3d 340, 343 (Tenn. 2004); *Smith v. Gore*, 728 S.W.2d 738, 750-51 (Tenn. 1987).

[2] In an action to modify an existing parenting plan, a proposed parenting plan must be filed by the party seeking modification, unless the requested modification affects only child support.  Tenn. Code Ann. § 36-6-405.  This provision does not apply to the case before us since there was no existing parenting plan.

[3] This provision expressly does not apply to parties divorced before July 1, 1997, who return to court to enter an agreed order modifying the previous order.  Tenn. Code Ann. § 36-6-404(a).  This exception became effective April 24, 2002.  The main provisions of subsection (a), including the requirement of a plan upon modification, took effect January 1, 2001.

applies here because of the similar wording of the statutory provisions. Consequently, a permanent parenting plan that was consistent with the statutory requirements should have been entered. If the parents could not agree on the terms of a plan, the court was required to fashion one. *See* Tenn. Code Ann. §§ 36-6-405 and 36-6-404(b).

Under applicable statutes, a permanent parenting plan must include both a residential schedule, *see* Tenn. Code Ann. § 36-6-404(b), and the designation of a primary residential parent, *see* Tenn. Code Ann. § 36-6-402(5). *Hopkins v. Hopkins*, 152 S.W.3d 447, 450 (Tenn. 2004). The primary residential parent is the parent with whom the child resides more than fifty percent (50%) of the time. Tenn. Code Ann. § 36-4-402(4). Herein, that is the father. At the time of the proceeding below, child support could not be awarded to the parent who is not the primary residential parent.[4] *Gray v. Gray*, 78 S.W.3d 881, 884 (Tenn. 2002). "In sum, only the parent who spends the greater amount of time with the child should be awarded child support, and that parent, by statutory definition, will always be the primary residential parent." *Id.*

The fact that no permanent parenting plan was entered herein does not make the legal requirements of such a plan inapplicable to the modification. Accordingly, I would hold that a permanent parenting plan was required to be entered in this modification proceeding. Since the parents did not agree on a plan, the trial court was required to enter one that met applicable legal requirements. Such a plan could not have awarded child support to the mother. Consequently, the trial court's holding that the father's support payment was to be recalculated, but still imposed, was in error and must be reversed.

Despite the statutory provisions set out above, the majority holds that neither the father nor the mother is entitled to a modification of the prior order or decree,[5] because they agreed in their MDA that the father would pay support in a specified amount. I disagree with this holding because I believe that the earlier agreement on the subject of child support was incorporated into the final decree and remained subject to modification by the court.

In the context of child support, the general rule or principle regarding the extent to which a divorcing couple's agreement is merged into the divorce decree was set out in *Penland v. Penland*, 521 S.W.2d 222 (Tenn. 1975). That case involved a parent's agreement to pay for all future educational expenses of the parties' two children beyond the high school level.[6] In the portion of the opinion most pertinent to the issue before us, the Tennessee Supreme Court held:

---

[4] The new child support guidelines, effective in 2005, use an income shares approach.

[5] Except that, on the basis of the majority's interpretation of the parties' agreement, the father is entitled to decrease his payments.

[6] At the time of the agreement, the age of majority was 21. By statutory amendment, the age of majority was later reduced to 18.

The authority of the courts to order child support and, if necessary, to enforce same by the process of contempt, is statutory, and generally exists only during minority. When the husband and wife contract **with respect to the legal duty of child support**, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature.

. . . the reason for stripping the agreement of the parties of its contractual nature is the continuing power of the Court to modify its terms when changed circumstances justify. It follows, and we so hold, that only that portion of a property settlement agreement between husband and wife **dealing with the legal duty of child support**, or alimony over which the court has continuing statutory power to modify, loses its contractual nature when merged into a decree for divorce.

*Id.*, 521 S.W.2d at 224 (citations omitted) (emphasis added).

The court concluded that the provision of the parties' agreement obligating the father to pay college expenses "is a contractual obligation outside **the scope of the legal duty of support during minority**, and retained its contractual nature, although incorporated in the final decree of divorce." *Id*. at 224-25 (emphasis added).

As the Court made clear in *Penland*, the parties' agreement "with respect to," "dealing with" or within "the scope of" the legal duty to support during minority was merged into the decree and remained subject to modification. In the case before us, the provision of the parties' agreement at issue dealt with the subject of support for the minor children. Consequently, it was merged into the decree and was subject to modification. *Wade v. Wade*, 115 S.W.3d 917, 921 n. 2 (Tenn. Ct. App. 2002) (stating that notwithstanding the language of the MDA, the agreement regarding child support was merged into the decree). *See also Cox v. Cox*, No. E2002-02034-COA-R3-CV, 2003 WL 1797944, at *2 (Tenn. Ct. App. March 31, 2003) (holding that while divorcing parents may agree to child support payments higher than those mandated by the guidelines, such agreement is still about child support and, consequently, is merged into the decree approving it.)

The majority opinion herein,[7] and to a greater extent the cases relied on in that opinion, apparently define the scope of the legal obligation of support during minority as the amount that would be required under the child support guidelines.[8] In my view, that reading confuses the scope

---

[7]The holding in *Gray* that a court can make an award of child support only to the primary residential parent was based on the Court's interpretation of the guidelines.

[8]The opinions relied on by the majority illustrate the problems and potential inconsistencies presented by retreating from the *Penland* holding that any agreement respecting child support during minority loses its contractual nature. Several of those opinions appear to be based on the proposition that any amount agreed to that exceeds the amount that would be paid under the child support guidelines is outside the scope of the legal duty to support. That position presumes that the court has or will establish the amount that would have been due under the guidelines or, more

(continued...)

-3-

of the obligation, which is imposed on every parent to support his or her children during their minority, with the measure or determination of how that obligation is fulfilled by both parents in a particular factual situation. *See Hopkins*, 152 S.W.3d at 449 (stating that both parents have an obligation to support their minor children); *Gallaher v. Elam*, 104 S.W.3d 455, 461 (Tenn. 2003). The father in this case has a legal obligation to support his children. "[U]nder Tennessee law . . . every parent is obligated to support his or her child during minority. No court order need be entered for this obligation to exist." *Wilson*, 132 S.W.3d at 343 (citation omitted). The fact that currently he cannot be ordered to pay the mother a specified amount for support of the children does not eliminate his legal obligation. Consequently, any agreement about payment of child support is within the legal obligation to support.

The position that any amount above the guidelines amount exceeds the legal duty to support also ignores the other language in *Penland* that agreements "with respect to" or "dealing with" support during minority are merged into the court's decree. The other type of agreement that is always merged is one that deals with "alimony over which the court has continuing statutory authority to modify." *Penland*, 521 S.W.2d at 224. Thus, where the issue is modification of an MDA provision on payments to the former spouse, the determinative question is whether those payments constitute alimony *in futuro* or something else, such as alimony *in solido* or a division of property. *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993). The same analysis applies to child support: are the payments agreed to actually child support or are they something else? *See Ellis v. Ellis*, 212 Tenn. 116, 368 S.W.2d 292, 295 (1963) (holding that a car was not child support under the statute authorizing a court to modify a previous child support order). That is because the critical element is the court's authority to modify.

The result in *Penland* was dictated by the long-standing statutory provision giving courts the continuing authority to modify child support during a child's minority. *Penland*, 521 S.W.2d at 224 ("the reason for stripping the agreement of the parties of its contractual nature is the continuing

---

[8](...continued)

accurately, what a court applying the guidelines would have determined was due. That is not always as simple as multiplying the applicable percentage by the obligor's net income, since questions sometimes arise regarding calculation of income and the effect of guideline-authorized or court-ordered deviations. Nonetheless, it seems such a calculation would be necessary, but the cases cited do not always indicate that the reviewing court made that determination.

Additionally, the current system of statutes and guidelines presumes that support will increase as the obligor parent's income increases enough to create a significant variance. Regarding an agreed upon amount of child support as contractual in nature would preclude the modification the law envisions and would deprive children of the benefits of their parent's increased income. The test seemingly applied in the cases is whether the parent agreed to pay more than the guidelines at the time of the agreement, not whether it continues to be more than the guidelines amount.

Finally, the opinions do not distinguish between that portion of the agreed-to payment that would have been required under the guidelines and that portion that the court considers "beyond" the legal obligation of support. Surely, there can be no dispute that any amount required by the proper application of the guidelines and the law remains modifiable by the courts. However, the opinions cited do not make this distinction and appear to consider the total amount agreed to as retaining its contractual nature. This treatment raises questions about what part, if any, is enforceable through contempt.

power of the Court to modify its terms when change circumstances justify"); *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975) (explaining that otherwise, a subsequent modification by the trial court would violate the Constitutional provision against impairment of contracts); *Brown v. Brown*, 198 Tenn. 600, 281 S.W.2d 492, 503 (1955) (holding that the effect of the legislation was to retain decrees for alimony and support within the control of the court entering them to make such modifications "as changed conditions and circumstances may require"). In fact, the intent of the statutory provision regarding modification was

> to incorporate in every divorce decree, without express recitation therein, a retention of control over the decree by the Court as to all questions *involving the custody or support of the minor children of the parent parties*, with power to make all 'such changes or modification' in the decree 'as the exigencies of the case may require.'

*Ellis*, 212 Tenn. at 121, 368 S.W.2d at 295 (emphasis in original), quoting *Davenport v. Davenport*, 178 Tenn. 517, 160 S.W.2d 406, 407 (1942).[9] Accordingly, courts retain their jurisdiction and authority to make subsequent orders regarding support for a minor child as the circumstances require, regardless of the parents' agreement at the time of divorce.[10] *State ex rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 197 (Tenn. Ct. App. 2001) (involving an agreed order that included language that the parties agreed that the order is "final and binding from this day forward").

Parties to a divorce cannot by contract deprive the courts of their statutory authority over matters such as child custody and support. "Courts derive their powers to adjudicate not from the parties, but from the law." *Brown*, 281 S.W.2d at 501. I believe that the statutory scheme makes it clear that courts are to retain authority over both the custody and support of children during their minority so that adjustments in both areas can be made that reflect the current situation, meet the interests of the children, and are consistent with each other. As I read the majority opinion, it holds

---

[9] The majority would attribute knowledge of certain legal principles to the parties at the time of their agreement. The law attributes to them knowledge that any agreement on child support during minority was subject to later judicial modification.

[10] Because all kinds of changes can occur that affect the interests of minor children, the General Assembly determined long ago that courts must retain the authority to modify orders affecting those children. The wording of the description of the circumstances in which such modification is appropriate has changed over the years. When *Penland* was written, the applicable statute provided that the trial court could modify certain kinds of alimony and child support when there was a material change of circumstances. Later, the legislature amended the statute to distinguish between alimony and child support and provided a different standard for modification of child support. That standard, which was in effect at all times relevant herein, is whether there is "a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered," unless the variance results from a previously ordered deviation and no circumstances have changed. Tenn. Code Ann. § 36-5-101(a)(1)(A). This dissent is not the appropriate vehicle to discuss or attempt to resolve the question of the appropriate standard for a modification of child support caused by the interplay between material change of circumstances and significant variance, the effect of *res judicata*, and recent statutory amendments that appear to reintroduce "material change of circumstances" language into the child support modification context.

that because the parties agreed, the court lost its power to modify. I think that is a reversal of the principle that because the court continues to have authority over child support, the parties' agreement is always subject to future modification in appropriate circumstances. Consequently, I must respectfully dissent.

_____
PATRICIA J. COTTRELL, JUDGE