IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 18, 2005 Session

## ALFONZO SILVESTRE ARZE v. MARY ANNE BRACKEN ARZE

**Appeal from the Chancery Court for Washington County**
**No. 33035     G. Richard Johnson, Chancellor**

---

### No. E2004-01325-COA-R3-CV - FILED MAY 23, 2005

---

Alfonzo Silvestre Arze ("Father") and Mary Anne Bracken Arze ("Mother") were divorced in 2000. The divorce was based upon stipulated grounds of irreconcilable differences, and the parties submitted a marital dissolution agreement ("MDA") to the Trial Court for approval. The terms of the MDA were agreed upon through mediation. At the time of the divorce, Father was employed as a physician with gross earnings of approximately $150,000. Mother was unemployed. Due to the significant disparity in income, Father agreed to pay Mother $2,000 in child support even though he was not obligated legally to do so since he was the primary residential parent for the parties' four children. When the oldest child turned eighteen, Father reduced his child support payments by twenty-five percent, $500. After Mother challenged Father's unilateral reduction in child support, the Trial Court entered an order which required Father to pay child support in an amount consistent with the Child Support Guidelines ("Guidelines"). We conclude that because Father was not legally obligated under the Guidelines to pay any child support, the payment of $2,000 was purely a contractual obligation which was not governed by the Guidelines. We also conclude that Father was within his contractual rights when he reduced the child support payments by $500 when the oldest child became emancipated.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery
### Court Affirmed in Part and Modified in Part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., joined, and PATRICIA J. COTTRELL, J., dissented.

Mark D. Slagle, Johnson City, Tennessee, for the Appellant Alfonzo Silvestre Arze.

M. Stanley Givens, Johnson City, Tennessee, for the Appellee Mary Anne Bracken Arze.

## OPINION

## <u>Background</u>

Mother and Father were married on January 7, 1984, and had four children who currently are ages 11, 14, 16, and 20. The parties were divorced on June 20, 2000, based upon the stipulated ground of irreconcilable differences. The Trial Court's final divorce decree approved and incorporated the terms of an MDA which had been negotiated and ratified by the parties through mediation. The MDA provided that the parties would have joint legal custody of the children, Father would be the primary residential parent for all four children, and Mother would have an extended visitation schedule.

Father is a practicing physician specializing in gynecology and obstetrics. Father's gross income for the year prior to the divorce was approximately $150,000. Although Mother was a registered nurse, she was not actively employed at the time of the divorce. The obvious disparity in income was taken into account in the MDA which provides:

> Although [Father] is the primary physical custodian of the parties' minor children, due to the disparity in income of the parties and the fact that [Mother] is unemployed and the fact that [Mother] has visitation with the children over and above standard visitation; [Father] shall pay to [Mother] the sum of $2,000 per month child support beginning July 2000 and on each and every month thereafter. This sum shall be paid directly to [Mother]. Due to the reasons set forth above this sum deviates from the guidelines set forth by the State of Tennessee.

The MDA then sets forth the manner in which the parties agreed to divide the marital property and marital debts. The parties also agreed that Mother would receive transitional and/or rehabilitative alimony in the amount of $1,000 per month for three years and this alimony payment was "non modifiable. It may not be extended, increased, or decreased."

In October of 2002, Mother filed a motion seeking to modify the final divorce decree. Mother sought, among other things, an increase in child support payments claiming there had been a substantial and material increase in Father's monthly income. Mother also sought to have Father held in contempt of court. According to Mother, when the parties' oldest child graduated from high school and turned eighteen, Father violated the final decree by unilaterally decreasing his monthly child support payments twenty-five percent from $2,000 to $1,500.

Father filed an answer to Mother's motion and admitted that he reduced his child support payments in the amount alleged by Mother. Father claimed, however, that this reduction had previously been agreed to by the parties. Father also filed a counter-petition seeking modification of the final decree. Father claimed he should not have to pay any child support because he was the

children's primary residential parent. Father argued that the reason he agreed to pay child support in the first place was because Mother was unemployed, but that Mother had become gainfully employed as a full-time registered nurse since that time. Father also pointed out that he was paying the entire cost of the college education for the parties' oldest child.

A hearing was held on the competing motion and petition after which the Trial Court concluded that although Mother's visitation with the children was more than the amount typically contemplated by the Guidelines, Mother was not entitled to an increase in child support because Father was paying for all of the children's medical and dental healthcare expenses. Relying on the Guidelines, the Trial Court then held that Father was entitled to a reduction in child support because the oldest child had reached the age of eighteen. The Trial Court instructed the parties to determine what Father's child support payments would have been under the Guidelines for three children as of the date the oldest child reached the age of eighteen. The Trial Court also determined that Father was entitled to a downward deviation from the amount established by the Guidelines because Father had physical custody of the children for twenty out of thirty days each month. Finally, the Trial Court concluded that because Father had remarried and had a new child, the new child should be taken into account in Father's child support payments as of July 2003 when the legislature changed the law "to included calculations based on the presence of another child of the family."[1]

We have not been provided with the specific amount of Father's new child support payment as calculated following the Trial Court's ruling. However, based on Father's income it is likely that his monthly child support payments would be much higher than $2,000, even with the unspecified downward deviations allowed by the Trial Court.

Father has appealed from the Trial Court's final judgment. Father claims the decision of the Trial Court was in error because he should not have to pay any child support to Mother. In the alternative, Father claims the Trial Court erred by not reducing his $2,000 child support payment as a result of the parties' oldest child attaining the age of eighteen.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

---

[1] Following the hearing, the Trial Court announced its decision from the bench and correctly pointed out that the MDA designated Father as having "primary physical custody." In the Order incorporating its findings, the Trial Court incorrectly stated that neither party had been designated as the primary residential parent. We assume this was simply a mistake since Father clearly was designated the primary residential parent.

It is important to note at the outset that Father's initial obligation to pay $2,000 per month in child support was the result of a voluntary and negotiated agreement that was reached during mediation and has never been an obligation ordered by the Trial Court following a trial on the merits. At the time the parties were attempting to resolve this litigation through mediation, Father was gainfully employed with a substantial income. Mother was unemployed. The parties agreed that Father would have sole ownership of the marital residence after paying Mother $55,000 for her share of the equity. The parties also agreed that Father would be the primary residential parent and the four children would live with him in the marital residence. In addition, Father retained possession of virtually all of the personal property located in the marital residence except for a desk, a bicycle, a juicer, a foot locker and a photo album. Mother had to find a job as well as a place to live and furnishings for her new residence. Of course, Mother's new residence had to be suitable for her to exercise the extended visitation she was granted in the MDA. Apparently as part of this negotiated agreement which included significant benefits granted to Father, the parties agreed that Mother would receive $2,000 per month which the parties designated as child support, and an additional $1,000 per month designated as alimony payments lasting three years.

Notwithstanding the clear agreement reached by the parties, Father now claims that he should have to pay absolutely no child support whatsoever, relying heavily on the decisions of our Supreme Court in *Gray v. Gray*, 78 S.W.3d 881 (Tenn. 2002) and *Hopkins v. Hopkins*, 152 S.W.3d 447 (Tenn. 2004) . In *Gray*, the trial court designated the father as the primary residential parent, but due to various factors the trial court concluded each of the parties should pay the other 32% of their net income. Because of income differentials the father ended up paying the mother $600 per month. *Id.* at 882. In reversing the judgment of the trial court, the Supreme Court held as follows:

> We hold that the Child Support Guidelines require that child support may be awarded only to the primary residential parent. We further hold that the use of a comparative analysis of the parties' earnings is inappropriate under the Child Support Guidelines. The trial court failed to properly apply the applicable statutes and Child Support Guidelines in its award of child support in this case.

*Id.* at 885. The *Gray* Court then reversed the award of child support to the mother and remanded the case to the trial court to determine the proper amount of child support to be paid by the mother. In *Hopkins v. Hopkins*, 152 S.W.3d 447 (Tenn. 2004) the Supreme Court held that a trial court must designate one of the parents as the primary residential parent and only the parent so designated was entitled to receive child support.

At first glance, Father's argument that he should not be required to pay Mother any child support as he is the children's primary residential parent seems logical enough. *Gray* and *Hopkins* certainly stand for the proposition that a trial court, under the applicable Guidelines, cannot order the primary residential parent to pay child support. However, that is not the precise issue here because Father's obligation to pay $2,000 per month in child support did not arise from an order by

the Trial Court pursuant to the Guidelines and following a trial. If Mother and Father had not been able to successfully mediate the numerous matters at issue in their divorce and after the resulting trial, the Trial Court had designated Father as the primary residential parent and ordered him to pay child support, then we would easily and quickly conclude to reverse that decision. However, that is not what happened. The more precise question presented here is whether the facts in this case are such that the parties could voluntarily enter into an enforceable mediated settlement agreement in which Father agreed to pay child support even though the Trial Court could not have ordered Father to pay child support if there had been a trial where Father was designated as the primary residential parent.

We are not at all certain that Father truly appreciates the ramifications of his primary argument on appeal. The major problem with Father's position, should we accept it, is that we would be undoing a critical aspect of the parties' mediated settlement agreement. If we do that, this Court would have extreme difficulty in allowing many of the remaining terms of the MDA to remain intact. For example, would Mother have agreed to only three years of $1,000 in monthly alimony payments if Father also had not agreed to pay $2,000 in monthly child support payments? The same could be said about the way the parties agreed to divide the marital property. If Mother, who was unemployed at the time, knew that all she would be receiving was $1,000 a month in alimony for three years, would Mother have agreed for Father to retain possession of the marital residence and virtually all of its contents? Taking that one step further, if Mother sought to be awarded the marital residence and its contents, this very well might have changed her decision to agree to Father's being designated as the primary residential parent.

This Court obviously has no way of knowing what would have happened if this case had gone to trial. If we assume the terms of the MDA were not intended to take into account Mother's legal obligation to pay child support, we likewise have no way of knowing how the remaining terms of the MDA would have changed to compensate for these altogether new facts. Under these new facts the parties may have agreed that Mother was entitled to $4,500 in monthly alimony payments which would last for much longer than three years. Who knows? Suffice it to say, it would be altogether unfair to Mother for us to set aside only Father's voluntary contractual agreement to make child support payments and let him receive the benefits of their agreement. The more difficult task would be to determine the other aspects of the MDA which would then also need to be set aside.[2]

If we apply the applicable Guidelines without regard to any agreement in the MDA, during 2002 Mother would have had an obligation to pay child support of roughly $1,532 per month for the first five months. Beginning in June, her payments would have been reduced to

---

[2] If we set aside the alimony agreement contained in the MDA, the issue of whether one or both of the parties had grounds for divorce may once again become relevant because fault of a party is a potential consideration when awarding alimony. *See* Tenn. Code Ann. § 36-5-101(d)(1)(E)(xi). Since Father is remarried and has a child with his new wife, in no event would we set aside the portion of the final divorce decree which declared the parties divorced.

approximately $1,365 per month because the oldest child became emancipated.[3]  With regard to Father, since the children are with him twenty out of thirty days each month he is properly considered the primary residential parent.  Consistent with *Gray* and *Hopkins,* Father would have no legal obligation under the applicable Guidelines to pay any child support to Mother.  We also must keep in mind that typically a custodial parent cannot enter into a private agreement which relieves the non-custodial parent of his or her statutory obligation to pay child support.  *See, e.g., Berryhill v. Rhodes*, 21 S.W.3d 188 (Tenn. 2000); *Witt v. Witt*, 929 S.W.2d 360, 363 ("We find and hold that agreements, incorporated in court decrees or otherwise, which relieve a natural or adoptive parent of his or her obligation to provide child support are void as against public policy as established by the General Assembly.").

We believe the best way to resolve this appeal is to acknowledge that when the parties entered into the mediated settlement agreement and that agreement was judicially approved, the parties, their attorneys, the mediator, and the Trial Court were fully aware of the various aspects of the law as set forth above.[4]  In other words, all those involved knew that Mother would be required to pay child support once she began earning an income, and that Father had no legal obligation to pay child support because he was the primary residential parent.  With this in mind, coupled with the fact that Father was earning all of the income and retaining possession of the marital residence and essentially all of the furnishings, we believe the contractual intent of the parties was for Father to pay to Mother an amount equal to $2,000 per month net over and above Mother's child support obligation to Father.  In other words, if Mother's monthly child support obligation was $1,000, instead of Mother sending a check to Father in that amount, and Father then sending a check to Mother for $3,000, the parties simply agreed that Father would pay Mother the difference of $2,000.

The Western Section of this Court recently had occasion to discuss a child support agreement between a mother and father where the father agreed to pay more child support than was required by the applicable Guidelines.  In *Kesser v. Kesser*, No. W2003-02392-COA-R3-CV, 2005 Tenn. App. LEXIS 43 (Tenn. Ct. App. Jan. 27, 2005), *appl. perm appeal pending*, this Court stated:

> "Mothers and fathers certainly are free to agree that child support payments will be higher than mandated by the guidelines, and a trial court may approve such an agreement." *Cox v. Cox*, No. E2002-02034-COA-R3-CV, 2003 Tenn. App. LEXIS 257, at *7 (Tenn. Ct. App. Mar. 31, 2003).  Such agreements are expressly

---

[3] This is a rough estimate based solely on Mother's 2002 gross income of $53,940, which includes $12,000 in alimony payments.  This amount does not take into account any reductions for Mother's extended visitation or the like. In January of 2005, the new Guidelines based on income shares became effective in Tennessee.  Although these new Guidelines do not apply to the present case, due to the disparity in the parties' overall gross income, if they did apply Mother's monthly child support payments would be significantly reduced, but by no means eliminated.

[4] While *Gray* and *Hopkins* were decided after the parties reached the agreement contained in the MDA, these decisions did not change the law.  Rather, these decisions were the Supreme Court's interpretation of the Guidelines as they had existed for several years, including the time when the MDA was entered into and approved by the Trial Court.

provided for in the Tennessee Code, which states: "Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to support and maintenance of a party or as to child support. . . ." Tenn. Code Ann. § 36-5-101(h) (2003). An MDA is essentially a contract between the parties. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001). The Guidelines constitute the "minimum base for determining child support obligations." Tenn. Comp. R. & Reg. 124-2-4-.02 (5) (2003). This Court has previously stated:

> As the Guidelines only purport to create a minimum child support obligation, we find it entirely permissible for the parties to enter into an agreement which provides a method of calculating child support that is different from the percentage type mechanism contemplated in the Guidelines. . . . The only limitation to that right is the court's responsibility to insure that the children are adequately maintained. In that regard, the Child Support Guidelines provide the relevant standard.

> *McDonald v. Cowan*, No. W1998-00730-COA-R3-CV, 2000 Tenn. App. LEXIS 26, at *11 (Tenn. Ct. App. Jan. 19, 2000); *see also* Tenn. Comp. R. & Reg. 1240-2-4-.02(4) (2003) (stating that, when the parties present stipulations regarding child support to the court for approval, "the court shall use the guidelines in reviewing the adequacy of child support orders negotiated by the parties").

*Kesser*, 2005 Tenn. App. LEXIS 43, at ** 23-25. The *Kesser* Court then concluded that when a mother and father enter into a contract for the payment of child support in an amount contemplated by the Guidelines, that agreement when approved by a trial court merges into the trial court's final decree and loses its contractual nature. The reason for this is the continuing power of a trial court to modify the terms of the child support when appropriate under the law. *Id.*, at 26 (citing several cases including *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975) and *Wade v. Wade*, 115 S.W.3d 917, 924 (Tenn. Ct. App. 2002)). However, we then added:

> [T]o the extent the agreement exceeds the legal duty of child support over which the court retains the power to modify, it is not merged into the decree and is enforceable as any other contract. W. Walton Garrett, *Tenn. Divorce, Alimony and Child Custody* § 14-6 (1996). Thus, any voluntarily assumed obligation exceeding the minimum support required is controlled exclusively by the parties' agreement.

-7-

*Kesser*, 2005 Tenn. App. LEXIS 43, at * 27 (quoting *Haas v. Haas,* No. 02A01-9604-CV-00073, 1997 Tenn. App. LEXIS 269, at *9-10 (Tenn. Ct. App. Apr. 22, 1997) and citing *Mace v. Mace*, No. W2001-00574-COA-R3-CV, 2002 Tenn. App. LEXIS 274, at *7 (Tenn. Ct . App. Apr. 15, 2002) ("[A] child support obligation in excess of that which is legally mandated remains 'contractual' in nature even though it is incorporated into the final divorce decree.")).

We have already concluded that Father entered into a contractual obligation to pay Mother a monthly sum of $2,000 net over and above Mother's child support obligation under the Guidelines. The parties also intended this payment to be designated as child support. Because Father had no legal obligation to pay any child support under the Guidelines, the entire sum of $2,000 is thus a contractual obligation governed by principles of contract law, not the Guidelines. It necessarily follows that the amount of the monthly payment is not subject to modification as would be child support payments which are governed by the Guidelines. In other words, the amount of the payment neither can be increased because Father is making significantly more money, nor can it be decreased because he is making significantly less, etc. Finally, we conclude it was the intent of the parties that the $2,000 contractual payment was comprised of $500 each month for each minor child. When the parties' oldest child became emancipated, Father was well within his contractual rights to reduce Mother's monthly payment by $500 at that time.

Our interpretation of the parties' agreement accomplishes several important objectives. First, it recognizes that Mother has not been relieved of her legal obligation to pay child support and prevents the MDA from running afoul of public policy and Supreme Court precedent discussed above. Second, our interpretation prevents our having to set aside most of the MDA including those portions addressing alimony, the property settlement, and perhaps even Father's designation as the children's primary residential parent. Third, it is consistent with the public policy to encourage the resolution of disputes by compromise agreement. *See. e.g.*, *Harbour v. Brown for Ulrich*, 732 S.W.2d 598 (Tenn. 1987); *Environmental Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 535 (Tenn. Ct. App. 2000). Fourth, our interpretation accomplishes *exactly* what the parties intended to do all along when they agreed to the terms contained in the MDA. The cardinal rule of interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles *See Park Place Center Enterprises v. Park Place Mall Associates*, 836 S.W.2d 113, 116 (Tenn. Ct. App.1992). Finally, it is important to note that this is not a case where one of the parents is trying to evade his or her responsibility to pay child support. The parties' agreement contained in the MDA is such that the children have been and should continue to be properly cared for financially as there clearly are sufficient resources available to the parties to meet their children's needs as these resources have been contractually allocated by the parties.

We affirm the Trial Court's judgment that Father is not relieved of his contractual obligation to pay child support. However, we modify the amount of Father's child support payment to reflect his contractual obligation to pay $1,500 per month as of the date the oldest child reached the age of eighteen or had graduated from her regular high school class, whichever occurred later.

## **Conclusion**

The Judgment of the Trial Court is affirmed in part and modified in part, and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are assessed one-half against the Appellant Alfonzo Silvestre Arze and his surety, and one-half against the Appellee Mary Anne Bracken Arze.

 

 

_____
D. MICHAEL SWINEY, JUDGE