IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 3, 2025

## CORY RANDOLPH COX v. REBECCA LYNNE THUMM COX

**Appeal from the Chancery Court for Williamson County**
**No. 09-CV-23413    Deanna B. Johnson, Judge**

_____

## No. M2024-00827-COA-R3-CV

_____

In this post-divorce action, the father sought a reduction of his child support obligation because he had recently lost his employment and two of the parties' three minor children had become emancipated. Following a two-day hearing, the trial court removed the parties' two emancipated children from the child support worksheet but increased the father's child support payment upon finding that the father was willfully unemployed and imputing to him a salary commensurate with his previous wages. In calculating the father's new child support obligation, the trial court considered the father's recent tax information, his frequent job changes, his residential arrangements, his long-term failure to exercise his full weekend parenting time with the children, and the cost of his leisure travel. The trial court also imputed the proscribed statutory salary amount to the mother, who was not employed at the time of trial. Although both parties appeared *pro se* at the trial, the trial court entered an order granting the mother's request for attorney's fees without including an explanation of how the court determined the reasonableness of the fees. The father has appealed. Despite his *pro se* status before this Court, the father seeks attorney's fees on appeal, claiming that an out-of-state attorney prepared his appellate briefs. Upon thorough review, we deny the father's request for attorney's fees on appeal because the attorney who allegedly prepared the father's briefs did not sign the briefs or otherwise file an appearance with this Court as required by Tennessee Rule of Civil Procedure 11(b). We vacate the trial court's award of attorney's fees to the mother and remand that issue to the trial court for a written order containing sufficient findings of fact and conclusions of law. In all other respects, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JEFFREY USMAN, J., joined.

Cory Randolph Cox, Pro Se.

Rebecca Lynne Thumm Cox (Drennan), Pro Se.

# OPINION

## 1. Factual and Procedural Background

This case arises from a petition to modify child support filed by the petitioner, Cory Randolph Cox ("Father"), against the respondent, Rebecca Lynne Thumm Cox (Drennan) ("Mother"), on April 24, 2023, in the Williamson County Chancery Court ("trial court"). The trial court had previously entered a final decree of divorce and a permanent parenting plan order ("PPP") on January 11, 2011. In the PPP, the court had awarded to Mother 256 days annually with the parties' three minor children ("the Children") and 109 days to Father. According to the parties, Father initially owed a monthly child support obligation of $1,822.00 for the care of the Children, but in 2013, the trial court entered an agreed order reducing Father's child support obligation to $1,257.00 per month.[1] In the instant action, Father sought a further reduction of his child support obligation because (1) he had recently been terminated from his employment and (2) the parties' two oldest children had become emancipated in 2020 and 2022.

In January 2024, Father's attorneys withdrew from the case. Proceeding *pro se*, Father filed a motion for summary judgment, arguing, *inter alia*, that because the parties did not dispute that Father had been unemployed since March of 2023 and because two of the parties' children had become emancipated, there existed no genuine issues of material fact and he was therefore entitled to a reduction of his child support obligation as a matter of law. Mother filed a response to the motion, admitting that the parties' two oldest children had become emancipated but rejecting as unfounded Father's averments concerning his continued lack of employment and his unilateral child support calculations.[2] The trial court set the motion for summary judgment to be heard on May 14, 2024.

Father filed several additional motions, including a motion to move the summary judgment hearing to the earlier date of April 9, 2024, and to set the trial for May 14, 2024. On April 9, 2024, the trial court conducted a hearing on Father's motions. Following the hearing, the trial court entered a written order on April 10, 2024, granting Father's motion to set the matter for trial on May 14, 2024, and directing both parties to bring their "tax

---

[1] The record does not contain the initial child support worksheet that was filed with the final decree of divorce in 2011, but it does include the child support worksheet that had been incorporated into the agreed order modifying Father's child support obligation in 2013. The parties do not dispute either of the previous obligation amounts.

[2] Mother's counsel subsequently withdrew from the case, and Mother continued self-represented.

returns and social security statements for the years 2021, 2022, and 2023[.]"[34]  The trial court also instructed Father to bring proof of his unemployment benefits and his efforts to find employment since his termination in 2023.

During trial, the court heard testimony from Mother, Father, and Mother's husband, Gerald Drennan.  In addition, the court reviewed exhibits demonstrating, *inter alia*, proof of the parties' work history, expenses, Social Security benefits, and Father's federal income tax returns.  Both parties proceeded self-represented during the trial.  On May 28, 2024, the trial court entered a final written order in which the court (1) determined that the parties' two older children should be removed from the child support calculation because they had become emancipated; (2) imputed an annual salary of $35,936.00 to Mother "because of her education and because she [had] concede[d] she [was] voluntarily unemployed[;]" (3) imputed an annual salary of $200,000.00 to Father because Father was "willfully and voluntarily unemployed" according to the Tennessee Child Support Guidelines; (4) determined that the previous child support calculations had assumed a salary for Mother much higher than the amount she had actually earned during the relevant time period; and (5) found that shortly following the divorce, Father had ceased exercising his "Sunday evening parenting time," as provided in the PPP, such that Father should no longer receive credit in the child support calculation for those days.

Accordingly, the trial court increased Father's child support obligation from $1,257.00 per month to $1,529.00 per month, pursuant to Tennessee Code Annotated § 36-5-101, to be paid until the parties' youngest child attained the age of majority in June 2025.  Noting that Father had not exercised his Sunday evening parenting time for several years, the trial court increased Mother's parenting time on the child support calculation worksheet to 282 days annually and decreased Father's parenting time to 83 days annually.  By separate order, the trial court awarded to Mother $5,000.00 in attorney's fees.  Father timely filed a *pro se* notice of appeal to this Court on June 6, 2024.

After filing his notice of appeal, Father filed a motion to alter or amend the trial court's orders modifying his child support obligation and awarding attorney's fees to Mother.  In the motion to alter or amend, Father raised many of the arguments he had presented at trial.  Additionally, Father contended that because Mother had neither filed a

---

[3] The trial court did not mention or rule on the motion for summary judgment in its April 10, 2024 written order, and the record contains no transcript from the April 9, 2024 hearing.  Presumably, the trial court heard Father's motion for summary judgment during that hearing and denied it, resulting in the trial court's setting the matter for trial for May 14, 2024.  Regardless, Father did not raise any objections concerning the motion for summary judgment during the trial or in his motion to alter or amend, and has therefore waived any such objection on appeal.  *See PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 663 (Tenn. Ct. App. 2012) ("It is well established that an issue not raised in the trial court cannot be raised on appeal.") (citations omitted).

[4] In February 2024, Chancellor Erin W. Nations recused herself from the case, and Circuit Court Judge Deanna Bell Johnson presided over the trial thereafter.

petition for modification of the child support obligation nor instituted a petition for modification of co-parenting time, the trial court should not have modified his child support obligation in favor of Mother and should not have awarded to Mother additional co-parenting time days. Father also objected to the trial court's award of attorney's fees to Mother because the trial court had not held an evidentiary hearing on the matter. On July 11, 2024, the trial court entered an order denying the motion to alter or amend, stating that the court had lost jurisdiction over the matter when Father filed the instant appeal.

## II. Issues Presented

Father raises several issues on appeal, which we have restated and reordered slightly as follows:

1.  Whether the trial court erred and exceeded its authority by granting additional co-parenting time to Mother when Mother had not sought additional co-parenting time by filing a petition to modify the PPP.

2.  Whether the trial court erred and exceeded its authority by increasing Father's child support obligation when neither party had requested an increase in child support.

3.  Whether the trial court abused its discretion by using evidence of Father's previous salaries, leisure travel, and residential arrangements to find that Father was voluntarily unemployed and to impute an annual income of $200,000.00 to Father.

4.  Whether the trial court demonstrated judicial bias against Father during the trial.

5.  Whether the trial court abused its discretion by failing to impute a higher income to Mother.

6.  Whether the trial court abused its discretion by granting to Mother an award of attorney's fees without first conducting an evidentiary hearing or reviewing an attorney affidavit.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law *de novo* with no presumption

4

of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). In addition, the trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

We apply the deferential abuse of discretion standard to determinations regarding child support. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 114-15 (Tenn. 2012); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). As the *Richardson* Court explained:

> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable. *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001).

*Id.* at 725.

Regarding *pro se* litigants generally, this Court has determined:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

> The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

> Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to

at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (internal citations omitted).

## IV. Father's Request for Attorney's Fees on Appeal

Despite Father's *pro se* status, Father has included the following statement at the conclusion of his appellate reply brief:

> Father respectfully requests that [the Court of Appeals] . . . award Father attorney's, court reporter, appellate attorney's, and all filing fees, exceeding $15,000 at the end of this reply. Since Father was unable to find a Tennessee attorney in time to submit his briefs, he hired an out-of-state appellate attorney who prepared them for his filings and can submit the agreement, invoices, and attorney's affidavit.

Mother did not file a reply brief or respond to Father's request for attorney's fees.

"An award of appellate attorney's fees is a matter within this Court's sound discretion." *See Chaffin v. Ellis*, 211 S.W.3d 264, 294 (Tenn. Ct. App. 2006) (citation omitted). This Court has determined that *pro se* appellants may not recover attorney's fees. *See In re Estate of Brakebill*, No. E2019-00215-COA-R3-CV, 2020 WL 5874874, at *6 (Tenn. Ct. App. Oct. 2, 2020) ("[P]*ro se* litigants are not entitled to recover attorney fees. . . . Not even attorneys who proceed *pro se* are entitled to recover fees." (quoting *Simpson v. Montague*, 902 F.2d 35, at *4 (6th Cir. May 10, 1990))). Therefore, to the extent that Father appears to be requesting attorney's fees for his *pro se* appearance before either the trial court or this Court, the request is denied.

Concerning Father's revelation that an "out of state appellate attorney" has assisted him with the filings in this appeal, we note that no attorney has filed a notice of appearance before this Court on Father's behalf and there are no attorney signatures reflected on Father's briefs or any of the motions Father has filed in this appeal.[5] This type of "limited

---

[5] The practice of anonymously drafting pleadings, motions, or briefs on behalf of an otherwise self-represented party is sometimes referred to as "legal ghostwriting." *See* Caitlyn Parsley and Andrea K. Holder, *The Ethics of Ghostwriting Pleadings for Pro Se Litigants*, FOR THE DEFENSE (April 2019). In 2007, the American Bar Association recognized the practice of legal ghostwriting as a valid form of "limited scope representation" of an attorney for a *pro se* litigant. *See* ABA Comm. on Ethics & Pro. Resp., Formal Op. 07-446 (2007). Also in 2007, the Tennessee Board of Professional Responsibility issued a formal opinion stating that "an attorney may prepare pleadings for a pro se litigant without disclosing the name of the attorney on the pleading in circumstances where doing so allows the pro se litigant to protect his or her

scope representation" by an attorney has been recently addressed by the Board of Professional Responsibility of the Supreme Court of Tennessee:

> Attorneys may engage in limited scope representation so long as it is reasonable under the circumstances and the client gives informed consent preferably in writing. <u>Attorneys must follow the Tennessee Rules of Civil Procedure, specifically Rule 11.01(b) and (c)</u> regarding disclosure of such limited scope representation, in cases before a tribunal.

> \* \* \*

> Limited scope representation is specifically addressed in Rule 11.01(b) of the Tennessee Rules of Civil Procedure, which says "An attorney providing limited scope representation to an otherwise unrepresented party shall file at the beginning of the representation an initial notice of limited scope representation with the court, simply stating that the representation is subject to a written limited scope representation agreement, without disclosing the terms of the agreement."

> Tennessee has made clear through its Rules of Civil Procedure that <u>disclosure of limited scope representation must be made to the tribunal.</u>

Tenn. Eth. Op. No. 2025-F-172, 2025 WL 1197677, at \*1 (Tn. Bd. Pro. Resp. Mar. 14, 2025) (emphasis added).

Therefore, if Father did receive assistance from an attorney, such attorney has not complied with Tennessee Rule of Civil Procedure 11.01(b) because no attorney has filed with this Court any disclosure of his or her identity or provided a notice of limited scope representation as required by the rule. In addition, Father has disclosed that the attorney is an "out of state appellate attorney." Because the attorney has not disclosed his or her identity or whether he or she is licensed to practice law in this state, we cannot ascertain whether the attorney could properly appear before this Court. In such a situation, an award of attorney's fees would be inappropriate.

Finally, because Father has informed this Court that he was assisted by counsel in the filing of his appellate briefs, we decline to afford to Father the "leeway" and "less stringent" standards normally granted to *pro se* litigants who appear before this Court

---

claim or matter from being barred by a statute of limitation, administrative rule or other proscriptive rule where the assisting attorney will not provide further assistance." *See* Tenn. Eth. Op. No. 2007-F-153, 2007 WL 5010859 (Tenn. Bd. Pro. Resp. Mar. 23, 2007). However, Formal Ethics Opinion No. 2007-F-153 has since been vacated by the Board. *See id.* (vacatur noted on the Board of Professional Responsibility Website, available at https://www.tbpr.org/ethic_opinions/2007-f-153) (last visited on May 15, 2025 at 3:02 P.M. EDT).

unrepresented. *See Young*, 130 S.W.3d at 63. We do reiterate, however, that Father remains "entitled to fair and equal treatment" before this tribunal. *See id.* at 62.

## V. Reduction in Father's Co-Parenting Time

Father asserts that because Mother never filed a petition for modification of the PPP seeking a reduction in Father's annual co-parenting time, the trial court erred by reducing Father's time with the Children from 109 days to 83 days annually. Father contends that the issue of co-parenting time was never properly before the court because Mother only raised the issue for the first time in her opening statement at trial. However, Father's argument on this point is misplaced. The trial court did not actually modify the PPP but instead merely considered Father's failure to exercise his Sunday evening parenting time with the Children in its calculation of child support. The trial court stated in relevant part:

> Not long after the divorce, Father began to return to Florida on Sundays, thus failing to exercise his Sunday evening parenting time. Father lived in Orlando from 2011 to 2012 and, even after returning to live in Nashville, Father failed to exercise his Sunday evening parenting time. Indeed, for the majority of the time the parties have been divorced, Father has failed to exercise his Sunday evening parenting time. Currently, the child support worksheet reflects 256 days per year of parenting time for Mother and 109 days per year of parenting time for Father. Mother wants the child support worksheet to reflect 282 days of parenting time for her and 83 days of parenting time for Father because he does not exercise his Sunday evening parenting time. Father claimed at trial he will resume the Sunday evening parenting time but the Court finds those claims not credible and a little late as the only minor child will emancipate in a year.
>
> * * *
>
> The Court finds Father shall no longer receive credit for parenting time on Sunday nights. Thus, Mother has 282 days per year of parenting time and Father has 83 days per year of parenting time.

(Emphasis added.)

The trial court repeatedly referred to the child support worksheet and did not mention any change to the PPP. In addition, the trial court expressly stated during the hearing that it could not modify the PPP because neither party had filed a petition to modify co-parenting time. When Mother asked to adjust the co-parenting time days to reflect the reality that Mother normally cared for the Children during Father's Sunday night visitation time, the trial court responded:

8

What we can do is, I can take it – the reality of [the co-parenting schedule] into consideration in calculating child support, but I cannot modify the parenting plan because . . . there's no petition before me.

Nothing in the trial court's order modified the number of co-parenting days each parent could enjoy with the Children as had been set forth in the original PPP. Rather, the trial court properly adjusted the child support worksheet to reflect the actual number of days the Children spent with each parent for the sole purpose of calculating the adjusted child support award. *See, e.g.*, *Cocke v. Cocke*, No. M2015-01440-COA-R3-CV, 2016 WL 1613205, at *3 (Tenn. Ct. App. Apr. 19, 2016) (finding no error when the trial court had expressly stated that it was not modifying the permanent parenting plan but was merely using the actual days the child spent with each parent to complete the child support calculation worksheet to determine a modification of child support). Because the permanent parenting plan was not modified, Father's issue on this point is pretermitted as moot.

## VI. Increase in Father's Child Support Obligation

Father argues that the trial court erred by increasing his child support obligation because "neither party requested an increase in child support[;] therefore the court could not have awarded one."[6] Father emphasizes that he had petitioned to reduce his child support obligation and that Mother had responded to the petition requesting that the child support amount remain the same. Concerning modification of child support, Tennessee Code Annotated Section 36-5-101(g)(1) (West March 14, 2023, to current), provides in pertinent part:

Upon application of either party, the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered, unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed.

We note that "[c]hild support payments are for the benefit of the child," not the parents, and "both parents have a duty to support their minor children." *See Hopkins v. Hopkins*, 152 S.W.3d 447, 449 (Tenn. 2004). To this end, the Tennessee Child Support Guidelines ("the Guidelines") strictly govern a court's determination of a parent's child support obligation. *See Taylor v. Taylor*, No. E2021-01281-COA-R3-CV, 2022 WL 14997942, at *4-5 (Tenn. Ct. App. Oct. 27, 2022) ("The Child Support Guidelines have the force of law.") (quoting *Wade v. Wade*, 115 S.W.3d 917, 922 (Tenn. Ct. App. 2002)).

---

[6] In the final order, the trial court noted that "Mother did not file a motion to increase the child support because of the heartache of litigation."

When, as here, a parent has sought modification of his or her child support obligation, Tennessee Code Annotated Section 36-5-101(g)(1) provides that a trial court shall determine, based upon the factors outlined in the Guidelines, whether a "significant variance" exists between the initial child support obligation and the proposed support modification. If a significant variance is shown, the trial court must increase or decrease the support obligation accordingly unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances warranting the deviation have not changed. *See Wade*, 115 S.W.3d at 920 (citation omitted); Tenn. Code Ann. § 36-5-101(g)(1).

"A significant variance is defined as at least fifteen percent (15%) difference in the current support obligation and the proposed support obligation." *See* Tenn. Comp. R. & Regs. 1240-02-04.05(2)(b); *see also Kaplan v. Bugalla*, 188 S.W.3d 632, 637 (Tenn. 2006). "The parent seeking to modify a child support obligation has the burden to prove that a significant variance exists." *Wine v. Wine*, 245 S.W.3d 389, 394 (Tenn. Ct. App. 2007) (quoting *Turner v. Turner*, 919 S.W.2d 340, 345 (Tenn. Ct. App. 1995)). In considering whether a significant variance exists to warrant modification of a child support order, courts consider each parent's financial situation, including changes to the parent's employment, other sources of income, assets, and expenses. *See, e.g.*, *Smallman v. Smallman*, 689 S.W.3d 845, 869-73 (Tenn. Ct. App. 2023). In addition, the Guidelines mandate that "upon a demonstration of a significant variance, the tribunal shall increase or decrease the [child] support order as appropriate . . . ." Tenn. Comp. R. & Regs. 1240-02-04-.05(5) (emphasis added). In some cases, such as the instant action, a demonstrated significant variance in the child support obligation has resulted in the trial court's awarding an increase of the child support amount owed, even when the obligor filed a petition for a decrease in the amount. *See, e.g.*, *Mitchell v. Green*, No. W2005-01057-COA-R3-JV, 2006 WL 1472364, at *6 (Tenn. Ct. App. May 30, 2006) (affirming the decision of the juvenile court to increase the petitioner's child support obligation after calculating the actual amount of visitation days that the petitioner had exercised with the parties' minor child, even though the petitioner had initially sought a reduction in his child support obligation and neither party had sought an increase).

Here, after considering the relevant facts concerning the parties' incomes, assets, work history, and education, the trial court incorporated the child support worksheet to calculate Father's current child support obligation at $1,529.00 per month, which the court found demonstrated a significant variance because the new amount was greater than a fifteen-percent increase over Father's previous child support obligation of $1,257.00 per month. *See* Tenn. Comp. R. & Regs. 1240-02-04.05(2)(b). Having so determined, the trial court properly increased the amount of Father's child support obligation even though neither party had requested an increase in Father's child support obligation. *See* Tenn. Code Ann. § 36-5-101(g)(1); *see, e.g.*, *Mitchell*, 2006 WL 1472364, at *6. For these reasons, Father's argument on this point is unavailing.

## VII. Willful Unemployment and Imputation of Income to Father

Father posits that the trial court erred in finding him to be voluntarily unemployed and imputing income to him for purposes of raising the amount of his child support obligation. This Court has explained the proper standard of appellate review of a trial court's finding of willful and voluntary underemployment or unemployment as follows:

> A trial court's determination regarding willful and voluntary underemployment is entitled to a presumption of correctness, and "we accord substantial deference to the trial court's decision, especially when it is premised on the trial court's singular ability to ascertain the credibility of the witnesses." *Reed* [*v. Steadham*, No. E2009-00018-COA-R3-CV], 2009 WL 3295123, at *2 [(Tenn. Ct. App. Oct. 14, 2009)].

*Miller v. Welch*, 340 S.W.3d 708, 712-13 (Tenn. Ct. App. 2010) (quoting *Pace v. Pace*, No. M2009-01037-COA-R3-CV, 2010 WL 1687740, at *8 (Tenn. Ct. App. Apr. 26, 2010) (other internal citations omitted)).

The Guidelines provide a rubric for imputing income to a parent when the trial court determines that the parent is voluntarily or willfully unemployed or underemployed, as follows:

> The Guidelines do not presume that any parent is willfully and/or voluntarily under or unemployed. The purpose of the determination is to ascertain the reasons for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children.
>
> (I)    A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support.
>
> I.    The determination may be based on any intentional choice or act that adversely affects a parent's income.
>
> II.    Under the Guidelines, however, incarceration of a parent shall not be treated as willful underemployment or unemployment for the purpose of establishing or modifying a child support order.
>
> (II)    Once a parent that has been found to be willfully and/or voluntarily under or unemployed, additional income can be allocated to that parent to increase the parent's gross income to an amount which reflects the parent's income potential or

11

earning capacity, and the increased amount shall be used for child support calculation purposes. The additional income allocated to the parent shall be determined using the following criteria:

    I.    The parent's past and present employment; and

    II.    The parent's education and training.

(III)    A determination of willful and voluntary unemployment or underemployment shall not be made when an individual enlists, is drafted, or is activated from a Reserve or National Guard unit, for full-time service in the Armed Forces of the United States.

Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii). The Guidelines then list the following factors that may be considered by the trial court when determining willful underemployment or unemployment:

(I)    The parent's past and present employment;

(II)    The parent's education, training, and ability to work;

(III)    The State of Tennessee recognizes the role of a stay-at-home parent as an important and valuable factor in a child's life. In considering whether there should be any imputation of income to a stay-at-home parent, the tribunal shall consider:

    I.    Whether the parent acted in the role of full-time caretaker while the parents were living in the same household;

    II.    The length of time the parent staying at home has remained out of the workforce for this purpose; and

    III.    The age of the minor children.

(IV)    A parent's extravagant lifestyle, including ownership of valuable assets and resources (such as an expensive home or automobile), that appears inappropriate or unreasonable for the income claimed by the parent;

(V)     The parent's role as caretaker of a handicapped or seriously ill child of that parent, or any other handicapped or seriously ill relative for whom that parent has assumed the role of caretaker which eliminates or substantially reduces the parent's ability to work outside the home, and the need of that parent to continue in that role in the future;

(VI)    Whether unemployment or underemployment for the purpose of pursuing additional training or education is reasonable in light of the parent's obligation to support his/her children and, to this end, whether the training or education will ultimately benefit the child in the case immediately under consideration by increasing the parent's level of support for that child in the future;

(VII)   Any additional factors deemed relevant to the particular circumstances of the case.

Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iii).

Delving further into the subject of voluntary unemployment or underemployment, this Court has explained:

The Guidelines state that imputing additional gross income to a parent is appropriate if it is determined that he or she is "willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(i)(I). "This is based on the premise that parents may not avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity." *Massey v. Casals* [315 S.W.3d 788, 795], No. W2008-01807-COA-R3-JV, 2009 WL 4017256, at *6 (Tenn. Ct. App. Nov. 23, 2009). Therefore, a trial court may deny a petition for modification of child support if the significant variance is the result of willful or voluntary underemployment. *Wine* [*v. Wine*], 245 S.W.3d [389,] 394 [(Tenn. Ct. App. 2007)]. "The burden of proving that a significant variance is the result of willful or voluntary underemployment is on the party opposing the modification." *Id.* (citing *Demers v. Demers,* 149 S.W.3d 61, 69 (Tenn. Ct. App. 2003)). "The Guidelines do not presume that any parent is willfully and/or voluntarily under or unemployed." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(ii). "The purpose of the determination is to ascertain the reasons for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children." *Id.*

13

"A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that adversely affects a parent's income." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(ii)(I) (emphasis added). However, "[i]f a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully and voluntarily underemployed." *Owensby v. Davis*, No. M2007-01262-COA-R3-JV, 2008 WL 3069777, at *4, n.7 (Tenn. Ct. App. July 31, 2008). Although it is not required that parents intend to avoid their child support obligations by their actions, "willful or voluntary unemployment or underemployment must result from an intent on the part of the parent to reduce or terminate his or her income." *Wilson v. Wilson*, 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000). The child support guidelines provide the trial court with several factors it may consider in making this determination. "'Determining whether a parent is willfully and voluntarily underemployed and what a parent's potential income would be are questions of fact that require careful consideration of all the attendant circumstances.'" *Reed v. Steadham*, No. E2009-00018-COA-R3-CV, 2009 WL 3295123, at *2 (Tenn. Ct. App. Oct. 14, 2009) (quoting *Owensby*, 2008 WL 3069777, at *4). The trial court has considerable discretion in its determination of whether a parent is willfully or voluntarily underemployed. *Hommerding v. Hommerding*, No. M2008-00672-COA-R3-CV, 2009 WL 1684681, at *7 (Tenn. Ct. App. June 15, 2009) (citing *Eldridge v. Eldridge*, 137 S.W.3d 1, 21 (Tenn. Ct. App. 2002)); *see also Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001).

*Miller*, 340 S.W.3d at 712 (quoting *Pace*, 2010 WL 1687740, at *8 ) (footnote omitted).

In the case at bar, the trial court modified Father's child support obligation from $1,257.00 per month to $1,529.00 per month after determining that Father was voluntarily unemployed and imputing to him an annual salary of $200,000.00. Concerning Father's voluntary unemployment, the trial court made the following findings of fact:

Father was terminated from his role as a Senior Leader at CRM in March 2023 where he was earning $225,000 per year. Father claims he was terminated for requesting the people working for him be paid on time. However, he did not file a retaliatory discharge lawsuit against his employer and he did not present any evidence of the grounds of his termination, such as a "pink slip," during the trial, other than his testimony. Based on Father's prior employment history, the Court does not find credible Father's purported reason for his termination.

14

Father has tried to find employment since his termination. Exhibit 2 is his response to interrogatories in which he lists the places he has applied for work.

Father has a history of being terminated from his employment and moving from job to job. From November 2021 to August 2022, Father worked at Car Capital Technologies, Inc. in Dallas and lived in hotels. He was terminated because he had an employment dispute when he recommended firing a fellow executive.

Father was also terminated from GPO because, according to Father, the Chief Executive Officer replaced Father with a friend. Again, Father did not produce any evidence to support his claim, other than his own testimony, which the Court finds not credible. Father worked at GPO for about one year between 2020 and October 2021.

From 2017-2019, Father worked at Rush Enterprise, Inc. in Austin, Texas. Father claims he was laid off in a reduction in forces ("RIF"). Father failed to produce any evidence of the reason for his departure from this company, other than his testimony, which the Court finds suspect.

From 2016-2017, Father worked at DCI-Artform and left because he was terminated based on a client request.

In 2015, Father worked at Pull-A-Part in Atlanta, Georgia and left because he was recruited to work in Nashville.

From June 2014-December 2014, Father worked at Khoros but allegedly left because of a RIF and restructuring. Father failed to produce any evidence of the reason for his departure from Khoros other than his own testimony, which the Court finds suspect.

For a period of one year between 2013 and 2014, Father worked at Gratis Solutions, LLC, but left to go work for another company.

During a one-year period between 2012 and 2013, Father worked at HIS Markit but allegedly left because of a RIF after restructuring. Father failed to produce any evidence of the reason for his departure from this company other than his own testimony, which the Court finds suspect.

It seems Father chooses to voice his feelings in the workplace when perhaps he should keep them to himself and finds himself terminated.

Father currently works with Fraction L and Cell stack, which he has done for three months. Father claims he has no income from this venture, but the Court finds Father not credible on this issue. Father's LinkedIn profile indicates he is currently the President of Business Propulsion Partners, a job he has held since September 2022.

Father has collected $275 per week of Unemployment benefits. Since his termination over a year ago, Father has not worked anywhere. He hasn't even tried to get a job at Walmart, Taco Bell, or McDonald's. Father hasn't tried to earn money driving for Uber or Lyft and has not tried to do any type of self-employment such as Door Dash.

After recounting its factual findings and credibility determinations above, the trial court concluded that Father's demonstrated pattern of changing jobs numerous times over the previous thirteen years was "not impressive." The court then concluded that Father was "willfully and voluntarily unemployed," as follows:

Pursuant to the Tennessee Child Support Guidelines, the Court finds Father is willfully and voluntarily unemployed. TENN. COMP. R. & REGS. 1240-02-04-.04(3)(a)(2009). Father is highly educated and has a great deal of training beyond his bachelor's and master's degrees. Additionally, Father has an extensive, high-level employment history.

"The purpose of the determination [of willful or voluntary underemployment or unemployment] is to ascertain the reasons for the parent's occupational choices, to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren), and to determine whether such choices benefit the children." TENN. COMP. R. & REGS. 1240-02-04-.04(3)(a)(2)(ii). Even assuming Father's reason for his latest termination is true, the Court finds that, even though he had already been terminated at least once for speaking out in the workplace when he should have kept his thoughts to himself, Father chose to speak out again and was terminated for it. This fact leads the Court to find Father is voluntarily unemployed. *See* TENN. COMP. R. & REGS. 1240-02-04-.04(3)(a)(2)(ii)(1) (A determination of willful underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support) and TENN. COMP. R. & REGS. 1240-02-04-.04(3)(a)(2)(ii)(1) (The determination may be based on any intentional choice or act that adversely affects a parent's income).

Having thoroughly reviewed the record, we conclude that the trial court did not abuse its discretion in determining Father to be willfully and voluntarily unemployed. We agree with the trial court that Father's work history reflects Father's ability to hold "high-paying, high-level jobs." *See* Tenn. Comp. R. and Regs. 1240-02-04-.04(3)(a)(2)(iii)

(providing that factors for determining willful unemployment include the parent's "past and present employment[.]"). The court also properly considered Father's extensive education and professional training. *See id.* (stating that another factor to consider is the parent's "education [and] training."). The undisputed proof at trial demonstrated that Father holds a bachelor's degree in international business, a master's degree in business administration, and several post-graduate certifications and that he had been employed in executive-level positions in his industry for the past twenty years. Father did not present any proof that he was physically disabled or otherwise unable to maintain full-time employment. *See id.* (explaining that courts may consider a parent's "ability to work" in determining willful unemployment). The record contains no evidence of disability or any other limiting factor that would demonstrate a reason that Father would be unable to earn at least the amount imputed by the trial court.

After reviewing Father's work history, the trial court concluded that Father's testimony was not credible concerning his reasons for leaving some of his former jobs. The evidence preponderates in favor of the trial court's factual findings concerning Father's work history. Father's LinkedIn profile and his testimony during trial evinced that Father had worked for ten different companies spanning the last thirteen years, averaging a little over one year at each position. Father testified that he had been laid off from several of the companies due to a "RIF" (reduction in force), but the trial court found Father's testimony regarding these purported layoffs to be not credible because Father did not provide any evidence of being laid off, such as a "pink slip" or other communication from his employers. Concerning Father's most recent employment, Father testified that in March 2023 he had been terminated because he had made demands to the employer concerning payroll for himself and other employees. The trial court determined that in proffering the demands that had led to his most recent termination—demands similar to those that had led to at least one previous termination—Father had intentionally and knowingly chosen to end his employment in March 2023. We reiterate that the trial court is entitled to substantial deference when it comes to our review of its credibility determinations concerning Father's testimony regarding his employment. *See Miller*, 340 S.W.3d at 713. Accordingly, we will not disturb those determinations.

The trial court also considered evidence demonstrating that for several years, Father had been residing in his fiancée's home in Nashville without paying rent and noted that during the eighteen months preceding the trial, "even after being terminated from his employment, Father had taken numerous trips for pleasure." This travel included several international trips, the expenses for which Mother introduced as exhibits through Father's testimony. Although Father explained that some of these trips had been taken for "business research," the trial court determined his testimony on this point to be not credible. The trial court also found that Father's frequent travel undermined the credibility of his testimony that he had been seeking jobs since he lost his most recent employment in March 2023. The court stated that "[r]ather than spending his time looking for a job, Father has become quite the jet setter." The trial court also noted that Father had not "worked anywhere" since March 2023, such as attempting to "get a job at Walmart, Taco Bell, or McDonald's" or

trying to earn money "driving for Uber or Lyft" or other type of "self-employment such as Door Dash." Father's lack of such employment further discredited, in the trial court's view, Father's statements that he had been seeking gainful employment but had been unsuccessful.

The trial court also found not credible Father's testimony that he had received "no income" from his then-current venture, a job with "Fraction L and Cell stack." The trial court concluded that Father's extensive and expensive travel "belie[d] his purported income," which Father had claimed at trial to be zero, save for the unemployment payments of $275.00 per week he had been receiving. *See* Tenn. Comp. R. and Regs. 1240-02-04-.04(3)(a)(2)(iii)(IV) (providing that a "parent's extravagant lifestyle . . . that appears inappropriate or unreasonable for the income claimed by the parent" is one factor courts may consider "when making a determination of willful . . . unemployment[.]").

Upon thorough review, we determine that the evidence does not preponderate against the trial court's findings of fact concerning Father's living arrangements and travel as they related to his employment. Furthermore, we grant the proper deference to the trial court's credibility determinations and conclude that the trial did not err in finding Father's testimony concerning his travel, his purported job search, and his actual earning capacity to be not credible. *See Miller*, 340 S.W.3d at 713. For the reasons stated above, we conclude that the trial court did not abuse its discretion in determining that Father was willfully and voluntarily unemployed.

Having discerned that Father was willfully unemployed, the trial court imputed an income of $200,000.00 per year to Father to calculate the modified child support amount. The trial court arrived at this amount upon reviewing and averaging Father's gross annual salary for the years 2020, 2021, and 2022 and noting that although Father had reported zero income since his termination in March 2023, Father had been earning $225,000.00 per year before he was terminated. *See* Tenn. Comp. R. and Regs. 1240-02-04-.04(3)(a)(2)(iv). The court also considered Father's extensive education, training, and work history. *See* Tenn. Comp. R. and Regs. 1240-02-04-.04(3)(a)(2)(ii)(II) (directing that any additional imputed income allocated be based upon, *inter alia*, the parent's "past and present employment" and "education and training."). The trial court rejected Father's request to impute to him the statutory amount of $43,761.00, *see* Tenn. Comp. R. and Regs. 1240-02-04-.04(3)(a)(2)(iv)(I)(IV). As stated above, the trial court found disingenuous Father's averments that he had engaged in an extensive job search and had received no income except his unemployment benefits.

Upon careful review, we determine that the trial court did not abuse its discretion by imputing to Father an annual salary of $200,000.00 for the purpose of calculating child support. Father's Social Security statement, which was entered as an exhibit at trial, demonstrated that Father had earned $210,782.00 in 2022; $279,550.00 in 2021; and $93,099.00 in 2020. The trial court calculated the average of those three incomes to be

18

$194,447.00 per year.  As this Court has recently explained concerning a trial court's discretion to average annual salary amounts in determining child support:

> Generally, an award of child support should be set based upon the obligor parent's "most recent, actual income." *Smith v. Smith*, No. M2000-01094-COA-R3-CV, 2001 WL 459108, at *4-5 (Tenn. Ct. App. May 2, 2001).  However, under the Tennessee Child Support Guidelines[,] income averaging is appropriate when a parent receives variable income. *Cisneros v. Cisneros*, No. M2013-00213-COA-R3-CV, 2015 WL 7720274, at *5 (Tenn. Ct. App. Nov. 25, 2015) (citing Tenn. Comp. R & Regs. 1240-2-4-.04(3)(b)).  When averaging variable income, "'[t]he time period to be used lies within the discretion of the trial court based upon the facts of the situation.'"  *State ex rel. Moss v. Moss*, No. M2013-00393-COA-R3CV, 2014 WL 1998738, at *3 (Tenn. Ct. App. Apr. 24, 2014) (quoting *Smith*, 2001 WL 459108, at *6).

*Robeson v. Robeson*, No. M2023-01449-COA-R3-CV, 2025 WL 368233, at *7 (Tenn. Ct. App. Feb. 3, 2025).

After calculating Father's average annual salary for the previous three years, the trial court then incorporated the calculated average salary and Father's most recent annual salary of $225,000.00 to arrive at the $200,000.00 annual imputed salary for Father. Neither party disputes Father's past income figures.  After reviewing the testimony during trial and the exhibits introduced into evidence concerning Father's previous salary amounts, lifestyle, and travel, we determine that the evidence preponderates in favor of the trial court's factual findings regarding imputation of salary.  For the foregoing reasons, we conclude that the trial court did not err in finding that Father was voluntarily unemployed and imputing to him an annual salary of $200,000.00.

## VIII.  Judicial Bias

Father contends that the trial court exhibited bias against him when it considered his travel expenditures and living arrangements to determine that he was willfully unemployed.  However, as stated above, the Guidelines expressly allow for consideration of a parent's residential arrangements and expenses in determining whether a parent is willfully unemployed, especially when, as here, the parent is claiming to have zero income. *See* Tenn. Comp. R. and Regs. 1240-02-04-.04(3)(a)(2)(iii)(IV).  For these reasons, Father's argument that the trial court showed bias when considering Father's lifestyle is unavailing.

Father further argues that the trial court exhibited bias against him by (1) making evidentiary rulings adverse to Father and favorable to Mother; (2) "cross examining Father in a favorable way to Mother"; (3)"actively thwart[ing] Father's efforts to comprehensively demonstrate Mother's financial position"; (4) determining certain evidence to be irrelevant,

19

resulting in certain rulings adverse to Father; and (5) failing to use the "same logic" when imputing income to both parties.

This Court has stated on numerous occasions that "one of the central tenets of our jurisprudence is that all litigants have a right to have their cases heard by fair and impartial judges." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). However, this Court has also stated that it "will not permit litigants to refrain from asserting known grounds for [judicial] disqualification in order to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable." *Id.* (quoting *Holmes v. Eason*, 76 Tenn. (8 Lea) 754, 757 (1882)) (internal quotation marks omitted). Here, Father did not raise any concerns of judicial bias at any point during the trial or in his motion to alter or amend the trial court's judgment.[7] Therefore, Father has waived any claim of judicial bias that he might have raised in this appeal. *See id*. ("[F]ailure to assert [claims of judicial bias] in a timely manner results in a waiver of a party's right to question a judge's impartiality.") (citation omitted).

Even had Father timely raised the issue of judicial bias in this instance, the record does not support Father's assertions. As this Court has explained concerning judicial bias:

> A judge's comments and actions must be construed in the context of all surrounding facts and circumstances to determine whether a reasonable person would construe them as indicating partiality on the merits of the case. *Groves*[*v. Ernst-W. Corp.*, No. M2016-01529-COA-T10B-CV], 2016 WL 5181687, at *5 [(Tenn. Ct. App. Sept. 16, 2016)](citing *Alley v. State*, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994)).
>
> > [T]he terms "bias" and "prejudice" generally refer to a state of mind or attitude that predisposes a judge for or against a party or its case. *See Alley*, 882 S.W.2d at 821. However, not all unfavorable dispositions toward an individual or case can be properly described by those terms. The words suggest a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate because it is excessive, undeserved, or rests on knowledge the subject should not possess. *Liteky* [*v. United States*, 510 U.S. 540, 550, 114 S. Ct. 1147, 1154, 127 L. Ed. 2d 474 (1994)]. Accordingly, not every favorable or unfavorable opinion that a judge has of a party or case will be grounds for recusal. *See Alley*, 882 S.W.2d at 821.

*Cain-Swope v. Swope*, 523 S.W.3d 79, 89 (Tenn. Ct. App. 2016) (quoting *Groves v. Ernst-W. Corp.*, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *5 (Tenn. Ct.

---

[7] In addition, Father did not file a timely motion for disqualification or recusal of the trial judge with this Court pursuant to Tennessee Supreme Court Rule 10B.

App. Sept. 16, 2016)). Concerning the trial court's evidentiary and other procedural rulings which Father challenges, "[w]e have long recognized that the trial courts have the inherent authority to manage their dockets and to control the proceedings in their courtrooms." *Flade v. City of Shelbyville*, No. M2022-00553-COA-R3-CV, 2023 WL 2200729, at *25 (Tenn. Ct. App. Feb. 24, 2023); *see also Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000) ("Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts.").

We find nothing to suggest that the trial judge harbored an unfavorable disposition toward Father during the proceedings or that the judge was predisposed against Father before the case began. It is well settled case law that "adverse rulings, even if erroneous, numerous and continuous, do not, without more, justify disqualification" of a trial judge. *See Rothberg v. Fridrich & Assocs. Ins. Agency, Inc.*, No. M2022-00795-COA-T10B-CV, 2022 WL 218998, at *1 (Tenn. Ct. App. June 16, 2022) (quoting *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)) (internal quotation marks omitted). Furthermore, we note that the trial court rendered some decisions that were more favorable to Father than to Mother, such as the court's denial of Mother's motion to quash Father's subpoena of Mr. Drennan and its decision not to grant Mother's request to leave the parties' two emancipated children in the child support calculations. For the above-stated reasons, we determine that Father's arguments of judicial bias are unavailing.

## IX. Imputation of Income to Mother

Father urges that the trial court abused its discretion by not imputing a higher income amount to Mother for the purpose of establishing child support. The trial court imputed to Mother a gross annual income of $35,936.00 "because of her education and because she [had] concede[d] she [was] voluntarily unemployed." In reaching this amount, the court noted that Mother had been "a stay-at-home mother for nearly twenty years" and had earned an income of "less than $10,000.00 per year most years" except for a seventeen-month period during 2012 and 2013 when she had briefly earned a higher salary working for Nissan. Mother's Social Security statement, which was entered as an exhibit at trial, showed that in 2013, the year she had worked for Nissan, Mother had earned $87,141.00. Since that time, Mother had earned $2,027.00 in 2014; $1,385.00 in 2015; $2,700.00 in 2016; $6,540.00 in 2017; $6,468.00 in 2018; $8,710.00 in 2019; and $4,139.00 in 2020. The Social Security statement reflected no earnings for Mother in 2021 or 2022.

Mother admitted during trial that she was willfully unemployed and acknowledged that she had made a "personal decision to stay home" with the Children and to work either part time or not at all during the relevant time frame. Based upon Mother's testimony and the proof of Mother's income entered as exhibits, the trial court determined that Mother had been willfully unemployed and that it would be proper to impute a salary to Mother for the purposes of calculating child support. Concerning Mother's income and earning capacity, the trial court correctly determined that since 2013, when Mother was employed

by Nissan and made $87,141.00, Mother had earned less than $10,000.00 gross annual income per year.

To determine the appropriate amount of income to impute to Mother, the trial court heard and considered Mother's testimony that she had not worked full time in over ten years, she held a bachelor's degree in economics, and she had not attained any recent professional education or certification. The trial court properly credited Mother's testimony that she had chosen to spend much of the past ten years staying at home to care for the Children and her second husband's children. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iii)(III) ("The State of Tennessee recognizes the role of a stay-at-home parent as an important and valuable factor in a child's life."). The trial court imputed an annual income of $35,936.00 to Mother, which is the proscribed statutory amount for imputation of gross salary to female parents. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iv)(IV). We conclude that the trial court did not abuse its discretion when it imputed this annual salary amount to Mother for the purpose of calculating child support.

X. Award of Attorney's Fees to Mother

At the conclusion of trial, Mother sought an award of $5,000.00 in attorney's fees, which the trial court granted to Mother as the prevailing party in a child support action and memorialized the award in a separate order entered on May 29, 2024. Regarding attorney's fees, Tennessee Code Annotated Section 36-5-103(c) (West July 1, 2021, to current) provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

This statutory provision authorizes a trial court to award attorney's fees incurred in an action to modify child support. *See Wiser v. Wiser*, 339 S.W.3d 1, 20 (Tenn. Ct. App. 2010); *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (interpreting the statute as giving courts authority to award fees in child support modification cases generally); *Williams v. Williams*, No. E2004-00423-COA-R3-CV, 2005 WL 1219955, at *9 (Tenn. Ct. App. May 24, 2005) (concluding that the parent who successfully sought an increase in child support "was entitled to recover such reasonable attorney fees as were fixed and allowed by the Trial Court in its discretion"). Such an award of attorney's fees is within the trial court's discretion and is reviewed by this Court using the deferential abuse of discretion standard. *See Huntley*, 61 S.W.3d at 341. Thus, in this case, the trial court did have the discretion to award attorney's fees to Mother as the prevailing party in a child support modification action.

However, Father has questioned whether it was proper for the trial court to grant to Mother the fixed amount of $5,000.00 in attorney's fees without first holding an evidentiary hearing to determine the reasonableness of the fees, especially considering that Mother appeared *pro se* for the hearing and did not provide an attorney affidavit or other documentation to support the requested amount. Father advances the position that the trial court denied him due process and demonstrated bias against him by failing to determine whether the amount was reasonable. According to Father, the trial court should have conducted an evidentiary hearing on the issue of attorney's fees so that Father could present his own evidence and raise opposition to Mother's request.

As this Court has explained:

> "'[A] trial court is not required to hold a hearing as to the reasonableness of the amount of attorney's fees awarded unless a party makes a timely request.'" *Talley v. Talley*, No. E2016-01457-COA-R3-CV, 2017 WL 1592770, at *14 (Tenn. Ct. App. May 1, 2017) (quoting *Cremeens v. Cremeens*, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at *12 (Tenn. Ct. App. July 24, 2015)).
>
>> [A] trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be. Should a dispute arise as to the reasonableness of the fee awarded, then in the absence of any proof on the issue of reasonableness, it is *incumbent* upon the party challenging the fee to pursue the correction of that error in the trial court by insisting upon a hearing upon that issue.
>
> *Kline v. Eyrich*, 69 S.W.3d 197, 210 (Tenn. 2002) (quotations and bracketing omitted). In the absence of any request for a hearing, the party challenging the fee on appeal must "convince the appellate courts that he was denied the opportunity to do so through no fault of his own." *Moran v. Willensky*, 339 S.W.3d 651, 664 (Tenn. Ct. App. 2010).

*In re Samuel P.*, No. W2016-01665-COA-R3-JV, 2018 WL 1046784, at *20 (Tenn. Ct. App. Feb. 23, 2018).

We recognize that a trial court maintains discretion to award attorney's fees to the prevailing party in a child support action and that in certain instances, the court may award attorney's fees without conducting an evidentiary hearing or award fixed fees without first determining their reasonableness. *See id.* However, we further note significant differences between the facts in *Samuel P.*, quoted above, and the instant case. In *Samuel P.*, this Court

23

denied the father's request to overturn the trial court's award of attorney's fees to the mother in part because the father had not timely objected or requested a hearing. *Id*. at *19-20. By contrast, here, Father timely objected to the attorney's fees award both in his motion to alter or amend the judgment and on appeal. Moreover, Mother does not appear to have submitted proof of attorney's fees other than her request for the fees during her closing statement, whereas the mother in *Samuel P*. had submitted an affidavit and itemization of attorney's fees that the court had reviewed. *See id*. at *6. Because no proof of attorney's fees appears in the record, we must surmise that the trial court awarded attorney's fees to Mother without reviewing or referring to any attorney affidavit, ledger, or other documentation. In addition, the trial court did not provide an explanation for the award or the amount of attorney's fees in its written order, and we similarly find no such explanation in the transcript.

Inasmuch as the trial court failed to render findings of fact and conclusions of law concerning its decision to award attorney's fees to Mother, we are hampered in our ability to review the court's decision. *See Kathryne B.F. v. Michael B*., No. W2013-01757-COA-R3-CV, 2014 WL 992110, at *8 (Tenn. Ct. App. Mar. 13, 2014) (holding that "the lack of explanation in the court's order [regarding attorney's fees] stymies our ability to review the court's decision for an abuse of discretion"). The same is true regarding whether the amount of the attorney's fee award was reasonable. *See First Peoples Bank of Tenn. v. Hill*, 340 S.W.3d 398, 410 (Tenn. Ct. App. 2010) ("Where a trial court awards a fee, but there is nothing in the record to indicate that the trial court actually evaluated the amount of the fee to see if it is reasonable in light of the appropriate factors, the correct approach is to vacate the award and 'remand [the] case to the trial court for a new determination of an attorney's fee award under [Supreme Court Rule 8, RPC 1.8] and the applicable case law.'" (quoting *Ferguson Harbour Inc. v. Flash Market, Inc*., 124 S.W.3d 541, 553 (Tenn. Ct. App. 2003))). Therefore, by reason of the trial court's failure to render sufficient findings of fact and conclusions of law, the appropriate remedy is to vacate the attorney's fee award and remand the case to the trial court for written findings of fact and conclusions of law concerning its decision to award attorney's fees to Mother and the reasonableness of the amount awarded. *See, e.g.*, *Sibley v. Sibley*, No. M2015-01795-COA-R3-CV, 2017 WL 2297652, at *5 (Tenn. Ct. App. May 25, 2017).

XI. Conclusion

For the foregoing reasons, we vacate the trial court's award of attorney's fees to Mother and remand to the trial court for entry of an order that includes written findings of fact and conclusions of law respecting Mother's request for attorney's fees.[8] The trial court may conduct a limited evidentiary hearing as needed to review the reasonableness of Mother's requested fees. We affirm the trial court's judgment in all other respects.

---

[8] To the extent that Mother may have sought attorney's fees for portions of the underlying litigation during which she appeared self-represented, we reiterate that *pro se* litigants are not entitled to attorney's fees. *See Brakebill*, 2020 WL 5874874, at *6.

24

Father's request for attorney's fees on appeal is denied. Costs on appeal are assessed one-half to the appellant, Cory Randolph Cox, and one half to the appellee, Rebecca Lynne Thumm Cox (Drennan).

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE